Our third case this morning is 23-2119 N. Re. Google. Okay, Mr. Argyle. Good morning, Your Honors. May it please the Court. Arthur Argyle for Google. The claim limitation here requires a particular kind of threshold that is determined based on a time series of residuals. And in this context, a residual refers to a comparison of a measured value to an expected or average value. The Board here found that the prior art CUDIS reference taught this claim threshold, but that was wrong. CUDIS nowhere describes determining any threshold based on... Could you speak up just a little bit, please? Yeah. Apologies, Your Honor. CUDIS nowhere teaches determining any threshold based on the residual values themselves. Rather, CUDIS taught a static threshold that was just based on a minimum level of frequency that a user selects. That's at A405, paragraph 96. Even if that threshold were understood to teach a residual threshold, it would still not teach the claim limitation required here, which requires that the threshold is determined as a function of the residual. Does it really matter that a residual is based on frequency? In this case, it's the threshold that's based on the frequency, Your Honor, in CUDIS. But it does matter that the threshold here is determined based on the residual. And I think Google's specification is helpful here in illustrating the difference between a static threshold, like what's taught in CUDIS, and a threshold determined based on the residual, as in Google's claimed invention. So at A57, Google's specification compares these two types of thresholds. And it shows these two types of thresholds at A71 in figure four, which the Borg discussed. In the top graph, you see a static threshold, like what's described in CUDIS. The threshold is just a straight, horizontal line that needs to be exceeded in order for something to happen. The bottom graph, on the other hand, shows a threshold determined based on the residual, like in Google's claims. And in the bottom graph, you see that the threshold, shown as a dark, solid line, varies over time. It varies because the residual changes. And here, the residual is corresponding to the search activity for something like NYC train outage. And you see that in the dotted line, there's a spike corresponding to when a lot of users are searching for NYC train outage, presumably because there's been some issue in the New York City train system that has generated a lot of activity. So when that spike happens, the residual increases. It increases because all of a sudden, the measured number of searches is much higher than the predicted level of searches. And so that leads to a larger residual. And then importantly here, that leads to a higher threshold. You see that in the bottom of figure four, where after this spike in activity, the threshold goes up. Again, because the threshold is determined based on the residuals. The inventors discovered that this way of determining the threshold led to earlier detection in spikes in activity and fewer triggers when the activity or increase is predictable. Turning back to the Kudas reference, Kudas describes nothing like that. It just teaches setting a static threshold based on the minimum level of frequency which a user can select. So the board didn't read it that way. And looking at Kudas, it seems to me that interestedness depends on residuals. We agree that Kudas does teach a residual calculation. And that's later in the Kudas reference at A412. But importantly, in this discussion, Kudas doesn't describe any kind of threshold, let alone a threshold required in the claims which is determined based on the residual. It says at the end of 96, set a threshold of interestedness. That's correct, your honor. And in that paragraph, it goes on to say the threshold of interestingness meaning a minimum level of frequency set by the user. That's not teaching. Yeah, but elsewhere, as I think you just agreed, interestedness depends on residuals. The residual calculation, I agree, Kudas describes such a residual calculation. But it never describes how to convert that residual score into a threshold as in Google's invention. There's nothing like what is shown in that bottom graph in figure four where the threshold varies over time because of the change in the residual. All, the only threshold taught in Kudas at paragraph 96 is just where a user specifies some minimum level that needs to be achieved. Well, you're reading that parenthetical as limiting the calculation of interestedness, but elsewhere, the specification makes clear that interestedness can depend on residuals. That seems to me the heart of the issue, isn't it? I disagree that's the heart of the issue. Whether or not interestingness can be evaluated through a residual score is separate from the question of whether Kudas has any teaching of determining the threshold based on the residual. There's nothing like what Google describes, for example, at A50. If it weren't for the parenthetical, you wouldn't have an argument, right? I think we would still have an argument because Kudas, whether you consider just the paragraph 96 disclosure or the separate disclosure of a residual, in neither of those teachings does Kudas describe how to determine the threshold based on the residual. It's completely unlike what Google's specification sets out where at A56, it provides a formula for how to determine the threshold based on the residual. And that's just nowhere in Kudas. And because Kudas does not describe anywhere determining the threshold based on the residual, the board's obviousest conclusion lacks substantial evidence. I think this point is really important here, Your Honor. Just maybe to put it in another way, the threshold in Google's invention is a function of the residual. It's not just a constant value. And whether or not what's set forth in the parenthetical of paragraph 96, Kudas just doesn't describe any way to determine the threshold based on the residual, such that the threshold will vary as the residual varies. So we think that alone is sufficient to reverse the board's decision. But unless Your Honors have further questions on that issue, I'd like to now turn to the question of motivation. So let's go back to my original question. Why is it that a frequency is different from a residual? Your Honor, I think this is discussed at A12, where the board sets out a definition for what the residual is. And the residual requires a comparison of a measured value, such as in Google's specification, the number of search queries for NYC train average. You compare the measured value to the number of how many searches you're actually getting, versus what searches would be predicted through some model. So it requires a comparison, a difference. A frequency is just the rate of something over time. That's just saying, how many searches did we get over this time frame? So these are just two entirely different quantities that one does not teach the other. And I don't think there's really any dispute that a frequency is not a residual. So I'll turn now to the issue of combining embodiments, which is a separate basis for reversal here. So as we've been discussing, CUDIS has one embodiment with a threshold but no residual. That's at paragraph 96. And then a separate embodiment with residuals, a disclosure of a residual, but no threshold. That's at paragraphs 185 to 190 at 8412. The board relied on this later embodiment for the teaching of a residual, but it did not make any findings of motivation to combine or reasonable expectation of success. And that was contrary to this court's precedent. Because when combining multiple embodiments from a single reference, the board must still find and articulate a motivation to combine and a reasonable expectation of success. And the board just did not do so here. It took the threshold from the first embodiment and the residual from the second embodiment, but did not make any findings on why the skilled person would be motivated to combine those. That was particularly improper here because these two embodiments are described separately as using conflicting approaches. So as discussed with respect to the threshold, the threshold is only described as a subjective threshold in paragraph 96. The user just selects some level that needs to be achieved. And again, doesn't determine it based on the value of the residual. In the later embodiment, CODIS departs from that subjective approach. It sets forth a statistical approach that doesn't make any use of a threshold and instead just generates a ranked list of keywords. At paragraph 185, CODIS explains this. It says that, interestingness is a naturally subjective measure as what is interesting varies according to the group of individuals it is intended for. Then in paragraph- I'm a little confused. I mean, on 405, there's a heading hot keywords and that describes some of what we're talking about, including threshold. And then they come back to hot keywords on 412. Why are those not the same thing? So, agreed, your honor, that these, both of these embodiments are addressing what to do with keywords. But they differ in the critical respect here, which is that one uses a subjective threshold, whereas one does not use any kind of threshold. Instead, uses a more objective statistical approach that just involves creating a list of keywords that users can then- In paragraph 186, F-412 sets forth this difference in approach. It says, given the difficulty and subjective nature of the task, the present invention may adopt a statistical approach to the identification of hot keywords. And again, in that entire embodiment at 185 to 190, there is no mention of a threshold. In other words, the solution identified in CODIS here, in this later embodiment, a ranked list of keywords, is directly in response to the disadvantages of what CODIS is describing with respect to the subjective threshold. So it was improper for the board to just conflate these two embodiments, where the reference itself distinguished this as using conflicting approaches. And again, the board made no findings at all on the question of motivation or reasonable expectation of success. And that was particularly improper here, given the significant differences between these two embodiments, which used incompatible approaches. Unless your honors have more questions on that, I'll turn now to this last issue I'd like to address. The board stated that the claims here do not exclude the threshold from also being based on a frequency. But that finding is not sufficient to support the board's decision, because what ultimately matters here is whether the reference teaches determining the threshold based on the time series of residuals, not on whether or not the claims exclude a frequency. So because the CODIS reference just does not in any way teach determining the threshold based on the time series of residuals, it's irrelevant whether the claims exclude a frequency, or in this case, they're just silent on frequency. Okay, you're into your rebuttal time. I'll reserve the rest of my time for the rebuttal. Thank you, Your Honor. Okay, thank you. Mr. McBride. Good morning, Your Honors. May it please the Court. Rob McBride on behalf of the USPTO Acting Director. Judge Dyke, I'd like to start with your point. The heart of the case here is whether CODIS is limited to a threshold based on a frequency, and it's not. If you read CODIS, it talks about determining whether the ranked list of keywords are above a set measurement. And then it goes into one embodiment where it says that threshold can be based on frequency, and that's just one parenthetical. But then it goes and teaches another embodiment where the interesting measure is based on surprise, which is, it's undisputed, that's based on a series of residuals. And then it says you can calculate a list of keywords based on that objective measure of surprise. And then it says you can calculate a list of hot keywords, which CODIS says is above that set measurement, which in the second embodiment is gonna be the threshold based on interestingness based on surprise, which is based on a series of residuals. And so I think, like you said, CODIS is not limited to that one parenthetical where it gives one embodiment where the threshold is based on frequency. It also more broadly teaches a threshold based on surprise, which is undisputed, is based on a series of residuals. I'd also like to point out just the standard of review here. What a question, the dispute over what CODIS teaches is a question of fact, which is reviewed for substantial evidence. So even if you were to find that Google's narrow interpretation of CODIS was plausible, that still wouldn't be sufficient for them to succeed here on appeal. They also have to prove to you that the board's broader interpretation of CODIS was implausible or wrong. And I don't think they can meet that burden here. If there's no questions on that first argument, I'll touch on the second argument where Google argues that the claims also require, this claim construction argument that CODIS doesn't teach or suggest a system that automatically determines a threshold. And the director's point of view is that argument is new, it was raised for the first time on appeal, so it's forfeited, and- They point to the use of the word manual in, what is it, on 328? They say they raised it. They do make that argument. I would just point you to, if you look at page- The only threshold in CODIS is a manual threshold. Correct, and that's on A328, and it's in the argument section. And if you look at the context of their argument, they're arguing that CODIS does not teach the claim, and this is in quotes, the residual triggering threshold. So this statement is just one statement, and it's just arguing that CODIS doesn't teach a residual triggering threshold. Okay, it doesn't say anything about the claims requiring that the system automatically determine the threshold without any manual or human input. It would have to be, even in the patent, there would have to be manual input to tell the computer how to set the parameters. Exactly, and also, if you look at what they point to as supporting this argument, they point to the claim language, but the claim language doesn't require that the system generate the threshold by itself automatically. It broadly just says it has to determine what it is. It's broad enough to encompass human input, and in fact, the claims require receiving a query, which we know Google agrees that that's input from a user. And then if you look at pages 852 to 853 of the- I'm sorry. 856 to 857, this is the specification where they cite to the specification disclosing or teaching this requirement that the system has to determine the input. It doesn't actually teach that. It actually says that the threshold is equal to, and this is at page 856 in the second full paragraph starting at line six. It says, in one embodiment, the triggering threshold equals the median plus x, and x is this tuning parameter, times IQR, and that's the interquartile range. And then it goes on to say that x is a tuning parameter, and then in the next paragraph starting at line 15, it says that the tuning parameter is set so that the system triggers based on what it's set to. And if you go down to, like, for example, line 24, it says that one can use human raters and historical data to set the tuning parameter. So it's broadly teaching that one, like a person, is setting this tuning parameter, so it's encompassing human input there. And it goes on to say that there's different ways one can set that tuning parameter, lower for sports queries or higher for other queries. So even their own specification in the claims, that claim construction argument, it's broad enough to encompass manual input. So I think it's, that argument is new, so it's forfeited, it's also unpersuasive. And even if you were to find that their claim construction was somehow correct, that narrow interpretation, the claims here, I think, would still have a problem because at that point, they would simply be automating what was previously done manually, and under this court's case law, just automating, using a computer to automate what was done manually isn't sufficient to render something non-obvious. If there's no further questions on that issue, I'm happy to yield the rest of my time. Thank you. Mr. Argyle, I guess you've got about two minutes. All right, I'd like to start with where the Patent Office began, which is about whether this case all turns on whether or not CUDIS is limited to the frequency threshold. And we just disagree that this case is decided if you find that paragraph 96 could also involve a residual threshold. That is not correct, because even if you replaced or supplemented the threshold in paragraph 96 with some measure of a residual, a residual threshold itself is not determining the residual threshold based on the residual. CUDIS nowhere describes how the residual score is used to determine the threshold. It just teaches that the user specifies some level of the threshold. So we disagree that reading the later disclosure of a residual into paragraph 96 resolves this case. The critical issue here is that CUDIS does not describe determining the threshold based on the residual. So we think you can resolve that question and reverse the board's decision without even having to get to the system issue. We disagree with the Patent Office that the system issue was forfeited. Google argued at A328, as Judge Dyke recognized, that we distinguish the prior art as involving a manual threshold as opposed to a threshold that's set by the system, which is required here. At A13, the board recognized that argument. So that argument was not forfeited, but in any event, because regardless of the system user distinction, CUDIS does not describe determining the threshold based on a residual. The board's decision should be reversed. Okay, thank you. Thank you. And both counsel, the case is submitted.